Opinion of the Court by
Judge Owsley.
William Burnett was brought before the county court of Estill at the August term, 1825. upon a charge of being the father of a bastard child of which Ruah Pearson is stated, in the warrant that issued from a justice of the peace for his apprehension, to have been delivered on the 29th or 38th of October, 1824.
The evidence for and against Burnett was heard, and the court being of opinion that he was the father of the child, adjudged that he should pay for the maintainance of said Child, in case it should live so long, twenty dollars in commonwealth’s paper annually for the space of five years.
From a bill of exceptions which was taken to the opinion of the court, it appears that Burnett had been previously brought before the same court, upon a charge contained in the warrant under which he was then prosecuted of being the father of a bastard *107 of which the same Ruah Pearson was stated to have been delivered on the 29th January, 1825; and that upon hearing the evidence and due consideration thereof, it was adjudged by the court, that Burnett was not guilty of the charge contained in the warrant. This acquital, which took place at the May term of the court, 1825, was relied upon by Burnett on the latter trial in August, 1825, as a bar to the charge then depending against him; but the court were of opinion, that although the warrant in each case contained a charge against him for being the father of the same bastard child, yet, as the warrant which first issued, and by which he was brought before the court in May, 1825, stated the child to have been born the 29th of January, 1825, the acquital of that charge was no bar to the proceeding under the warrant which last issued, and which states the child to have been born in October, 1824. The first question which it is, therefore, proper for us to notice, involves the correctness of that opinion of the county court.
One acquittal on the merits in a case bastardy is a bar to a subsequent proceeding.
Time of the birth of the bastard shall be correctly stated in warrant.
If the time of the child’s birth had been stated in each warrant to be the same, the judgment of acquital pronounced by the court in the first case, would undoubtedly have been a conclusive bar to the latter. The proceedings in both cases would then most clearly be for the same thing, and no principle is better settled, than that after an acquital by the court upon the merits in the former, there could be no conviction in the latter case.
But the time of the child’s birth is alleged to be different in the two warrants, and according to the act upon the subject of bastards, we understand it to be essential, that the warrant should state correctly, the time of the bastard’s birth. It is by the warrant alone that any legitimate information is communicated to the person accused as to the charge he has to prepare to answer, and it will at once be perceived, that he will be better able to defend the charge by learning from the warrant the precise time of the birth of the child. The necessity for stating the time of the child’s birth correctly in the warrant, does not, however, rest upon reasons to be drawn *108 from the consequences of a different principle; it is sufficient that the precise time is required by the act of the legislature. The warrant, as it was correct to do, contains a recitation of the oath taken by the mother of the child, and the act explicitly requires, among other things, that in the oath, the time she was delivered of the child should be stated.
If the time of the birth be untruly stated in the warrant, an acquittal upon it will not bar a subsequent proceeding, on a warrant with the true time.
Judgment shall be that the bastard’s father shall pay money, not Commonwealth’s bank paper.
Turner, for plaintiff; Benny, Attorney General, and Coperton, for defendant,
If then it be essential, that the warrant should state the precise time of the child’s birth, it follows, that as to the time, the evidence must agree with the warrant, and without such evidence, there ran be no judgment of condemnation against the accused. The result consequently is, that the court below was correct in deciding that the judgment in favor of Burnett upon the first trial, was no bar to the proceedings under the second warrant.
But in rendering judgment against Burnett, we think the court erred in ordering him to pay the amount adjudged in paper of the bank of the Commonwealth. Bank paper is not money; and the act concerning bastards, which passed long before the establishment of the bank requires expressly, that the amount to be paid by the father of a bastard child, must be current money.
The judgment must, therefore, be reversed.